**21 MAG 7603**

Approved: _____
             MATTHEW R. SHAHABIAN
             Assistant United States Attorney

Before:   THE HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :   SEALED COMPLAINT
                                    :
                                    :   Violations of 18 U.S.C.
           - v. -                   :   §§ 1343, 1028A and 2
                                    :
RYAN MURDOCK,                       :   COUNTY OF OFFENSE:
                                    :   NEW YORK & WESTCHESTER
                Defendant.          :
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        KILSIE COLON, being duly sworn, deposes and says that she is a Special Agent with the United States Department of Labor, Office of Inspector General ("DOL-OIG") and charges as follows:

**COUNT ONE**
(Wire Fraud)

     1.  From at least in or about March 2020, up to and including at least in or about June 2021, in the Southern District of New York and elsewhere, RYAN MURDOCK, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MURDOCK used the personal identifying information of other persons to fraudulently apply for and obtain unemployment benefits, and in connection therewith and in furtherance thereof, MURDOCK transmitted and caused to be transmitted interstate wires.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT TWO
(Aggravated Identity Theft)

2.  From at least in or about March 2020 up to and including at least in or about June 2021, in the Southern District of New York and elsewhere, RYAN MURDOCK, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, MURDOCK possessed and used false identification documents bearing the real names of victims, and used the names, dates of birth, and social security numbers of those victims during and in relation to the wire fraud offense charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3.  I am a Special Agent with the DOL-OIG.  I have been personally involved in the investigation of this matter, and I base this affidavit on that participation, my conversations with other law enforcement agents and other individuals, my examination of reports and records, as well as my training and expertise.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of the investigation.  Where the contents of conversations of others are reported herein, they are reported in substance and in part.

4.  As set forth below, there is probable cause to believe that RYAN MURDOCK, the defendant, has participated in a scheme that sought to obtain at least approximately $3.2 million in unemployment benefits by fraudulently filing for unemployment benefits using the names and social security numbers of at least 169 people.

### The COVID-19 Benefits Fraud Scheme

5.  Since in or about May 2020, the DOL-OIG, the New York Department of Labor ("NY DOL"), the United States Postal Inspection Service ("USPIS"), and the United States Diplomatic

Security Service ("DSS") have been investigating fraud schemes targeting unemployment insurance benefits during the COVID-19 pandemic.

6. Based on my participation in this investigation and my conversations with other law enforcement agents, including investigators from the NY DOL, I have learned the following, in substance and in part:

   a. Unemployment Insurance ("UI") is a state-federal program that provides monetary benefits to eligible lawful workers. In the State of New York, the NY DOL administers the UI program.

   b. Initially as part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, UI eligibility was expanded to provide assistance as a result of the ongoing COVID-19 pandemic. In total, more than $300 billion in additional federal funds for UI benefits have been appropriated since in or about March 2020 ("COVID-19 Benefits").

7. The NY DOL, like other state DOLs, offers an online website ("the Website") through which applicants can apply for COVID-19 Benefits, among other things, and log in to their accounts to check payment status and verify unemployment status. In order to apply for COVID-19 Benefits through the Website, an applicant must complete a form that includes, among other things, the applicant's name, date of birth, social security number, and address. In addition, the applicant can direct that the NY DOL send any approved funds to a specific bank account or to a debit card. The debit cards are issued from a specific bank ("Bank-1") to applicants.

8. Based on my participation in this investigation, including my conversations with NY DOL employees, and my review of reports and records prepared by the NY DOL, I have learned that an applicant filing for COVID-19 Benefits through the Website is required to submit an online application. If the application is approved, the applicant is required to log on to the Website on a weekly basis thereafter to verify his continued unemployment status and efforts to seek employment. The applicant can also log on to the Website or call the DOL to, among other things, check the status of payment or request an address change.

3

**Fraudulent COVID-19 Benefits Applications**

9. I have learned the following from law enforcement reports and my conversations with law enforcement officers:

   a. On or about October 16, 2020, officers with the New Rochelle Police Department ("NRPD") observed the passenger (the "Passenger") of a 2016 Lexus SUV (the "Lexus") smoking a marijuana cigarette and smelled marijuana. The officers stopped the Lexus and spoke to the driver (the "Driver") and the Passenger, who refused to provide their names or identification.

   b. When the officers stopped the Lexus, a laptop computer was open on the lap of the Passenger to a website for the New Jersey Department of Labor (the "NJ DOL"). I know from training and experience that a person submitting a UI claim to the State of New Jersey can submit their claim through the NJ DOL website, including for COVID-19 Benefits.

   c. The officers conducted a search of the Lexus and recovered a New York State driver's license for RYAN MURDOCK, the defendant, who they identified as the Passenger. During the search of the Lexus, officers found a bag containing what the officer believed to be oxycodone pills, as well as 2 bags of marijuana. The officers arrested MURDOCK and the Driver.

10. NRPD officers searched the Lexus subsequent to the arrest of RYAN MURDOCK, the defendant, and the Driver. During that search, NRPD officers recovered, among other things, the following items from the Lexus:

   a. A U.S. Passport card issued in the name of a Minnesota resident ("Victim-1");

   b. 22 prepaid debit cards issued in the names of people other than MURDOCK and the Driver, including:

      i. A debit card issued in the name of Victim-1;

      ii. Two debit cards issued by the New Jersey unemployment insurance program in the name of a New Jersey resident ("Victim-2");

      iii. A receipt from a bank ("Bank-2") showing an ATM withdrawal on or about

        October 16, 2020 in New York, New York, using one of debit cards issued in the name of Victim-2;

    iv.   A debit card issued by the Kansas unemployment insurance program in the name of an 83-year-old Kansas resident ("Victim-3"); and

    v.   four unemployment insurance debit cards issued by Bank-1 for the New York Department of Labor (the "NY UI Cards"); and

    c.   A ledger (the "Ledger"), which included what appears to be personal identifying information ("PII"), i.e., names, dates of birth, and social security numbers of multiple people not related to MURDOCK or the Driver.

11.   Based on my conversation with a law enforcement agent ("Agent-1") who interviewed Victim-1 and a law enforcement report documenting the same, I know that Agent-1 interviewed Victim-1 on or about November 5, 2020. Victim-1 confirmed that Victim-1 lived in Minnesota, that Victim-1 was in possession of Victim-1's U.S. Passport book, and denied having ever applied for or possessed a U.S. Passport card. Victim-1 told Agent-1 that Victim-1 was a victim of identity theft, and that an unknown person or persons had used Victim-1's PII to obtain a $90,000 loan from the Small Business Administration and had attempted to open bank accounts in Victim-1's name.

12.   Based on my review of DOL records, I have learned that, on or about August 2, 2020, a person submitted to the NJ DOL a UI application for COVID-19 Benefits using the PII of Victim-2 (the "Victim-2 NJ Claim"). The NJ DOL paid out approximately $2,541 on the Victim-2 NJ Claim.

13.   I interviewed Victim-2 on or about July 21, 2021. Victim-2 confirmed that he had never applied for unemployment insurance benefits, including COVID-19 Benefits, and did not give anyone permission to use his PII to file for unemployment insurance.

14.   Based on my review of DOL records, I learned that on, or about July 6, 2020, a person submitted to the Kansas Department of Labor (the "Kansas DOL") a UI application for COVID-19 Benefits using the PII of Victim-3 (the "Victim-3 Kansas Claim"), using a mailing address in the Bronx, New York.

The Kansas DOL paid out approximately $24,743 on the Victim-3 Kansas Claim.

15. Based on my review of law enforcement reports, my conversations with law enforcement officers, and my participation in this investigation, I have learned that, using the NY UI Cards recovered from the Lexus, NY DOL investigators were able to identify at least approximately 170 claims for unemployment insurance submitted to the NY DOL (the "NY UI Claims") that were connected to the NY UI Cards. I have learned the following from my conversations with NY DOL investigators:

   a. Each NY UI Claim application included unique PII belonging to the applicant, including, among other things, the applicant's name, social security number, address, and phone number.

   b. Once the NY DOL approved a NY UI Claim, a debit card issued by Bank-1 was mailed to the home address provided on the NY UI Claim. Each debit card contained the full amount of benefits requested by an application from the date the applicant purported to be unemployed to the date of the debit card mailing. This amount was often in excess of $17,000.

   c. The NY DOL stores significant amounts of information in connection with every debit card issued containing New York unemployment insurance benefits, like the NY UI Cards, and with every claim submitted for New York unemployment insurance benefits.

   d. Based on the information stored by the DOL, NY DOL employees and law enforcement officers were able to match information associated with the NY UI Cards recovered from the Lexus with the NY UI Claims. NY DOL employees discovered, for example, phone numbers, mailing addresses, static IP addresses, Website session IDs, similar voices on call recordings to the NY DOL, or uncommon answers to online user security questions, all of which were used in submitting unemployment insurance applications that led to the issuance of the NY UI Cards, in logging in to the online New York unemployment insurance accounts linked to the NY UI Cards, or in phone calls placed to the New York unemployment insurance system in connection with the NY UI Cards, were similarly associated with the NY UI Claims.

   e. Based on my training and experience, these overlapping attributes likely mean that the same person or group of persons applied for the NY UI Claims.

    f. In total, the NY UI Claims sought at least approximately $3.2 million in unemployment insurance benefits from New York State on behalf of at least approximately 169 separate individuals. Between in or about March 2020 and at least in or about June 2021, the NY DOL caused Bank-1 to mail at least approximately 135 debit cards to at least approximately 33 addresses in connection with the NY UI Claims. These debit cards were used by individuals known and unknown to receive at least approximately $1 million in COVID-19 Benefits.

### RYAN MURDOCK's Participation in the Fraud Scheme

*Mailboxes*

 16. Based on my review of law enforcement reports, my conversations with law enforcement officers and DOL employees, and my review of records provided by the NY DOL and the Social Security Administration, I have learned the following:

    a. Two claims for unemployment insurance were submitted to the NY DOL in the name of RYAN MURDOCK, the defendant. One claim uses MURDOCK's real social security number (the "Real MURDOCK Claim"); the other claim uses the social security number of someone who is not MURDOCK (the "Fake MURDOCK Claim").

    b. The Real MURDOCK Claim used an address that I have learned from law enforcement databases and records provided by the Department of State is a residential address ("Address-1") in New Rochelle, New York that MURDOCK has previously used as his home address, including on his U.S. Passport application submitted in or about January 2021. The Fake MURDOCK Claim used as an address a mailbox ("Mailbox-1") at a UPS store in the vicinity of New Rochelle, New York.

    c. Claims for New York unemployment insurance have also been submitted in the names of two other people who share MURDOCK's last name and used Address-1. For each person, two unemployment insurance claims were also submitted to the NY DOL: one using that person's real social security number and the other using a synthetic, i.e., made-up, social security number.

    d. In total, approximately 24 of the NY UI Claims use Address-1 as their mailing address. Approximately 24 of the NY UI Claims use Mailbox-1 as their mailing address.

 17. Based on my conversations with NY DOL employees and review of records provided by the NY DOL I have learned that in

7

or about April 2020, one of the NY UI Claims was submitted in the name of a New York resident ("Victim-4"). In order to verify Victim-4's identity and fraudulently obtain COVID-19 Benefits in the name of Victim-4, the applicant submitted to the NY DOL images of a false U.S. passport and driver's license bearing Victim-4's real name and date of birth. A NY UI Claim debit card for Victim-4 was sent to Mailbox-1 in New Rochelle. Approximately $14,932 was paid out by the NY DOL on the NY UI Claim for Victim-4.

    18. Based on my conversations with Agent-1 and my review of a law enforcement report prepared by Agent-1, I know that Agent-1 interviewed Victim-4. Victim-4 told Agent-1 that Victim-4 learned from the NY DOL that Victim-4's identity had been stolen when Victim-4 legitimately applied for unemployment benefits in or about January 2021. Victim-4 told Agent-1 that the pictures on the false U.S. passport and driver's license submitted to the NY DOL in or about April 2020 were not of Victim-4. Victim-4 also told Agent-1 that Victim-4 had never lived in New Rochelle and has no affiliation to the area.

    19. I have learned from my conversations with a law enforcement officer who spoke with the owner of the UPS Store where Mailbox-1 is located (the "Owner") that, at the relevant times, Mailbox-1 was subscribed to a woman who never returned to the UPS Store after opening the account for Mailbox-1. The Owner noticed that multiple different people all had mail addressed to Mailbox-1, which the Owner found suspicious. The Owner voluntarily provided the law enforcement officer with certain pieces of mail that were addressed to Mailbox-1 but had not yet been placed in Mailbox-1 (the "Undelivered Mail").

    20. Based on my review of the Undelivered Mail and the contents of Mailbox-1, which were searched on or about December 2, 2021, pursuant to a judicially-authorized warrant (the "Search Warrant"), I have learned that Mailbox-1 and the Undelivered Mail contained a replacement debit card addressed to Victim-2 for the Victim-2 NJ Claim, and shipped in expedited shipping packaging.

    21. While executing the Search Warrant, I interviewed an employee of the UPS Store (the "Employee"). I showed the Employee a law enforcement picture of RYAN MURDOCK, the defendant. The Employee recognized MURDOCK as a person who had been coming to pick up mail from Mailbox-1. The Employee told me the Employee recognized MURDOCK based on flashy clothing and jewelry, including expensive designer sneakers, that MURDOCK frequently wore.

22. According to the Employee, MURDOCK had come to the UPS Store the day prior to the execution of the Search Warrant, i.e., December 1, 2020, and asked the Employee about whether Mailbox-1 had received a package in expedited shipping packaging. When questioned by the Employee about how MURDOOCK had legitimate access to Mailbox-1, MURDOCK told the Employee that the subscriber of Mailbox-1 was his cousin.

23. Based on my conversations with the Employee and my review of surveillance video provided to me by the Employee for the UPS Store where Mailbox-1 is located, the Employee identified for me RYAN MURDOCK, the defendant, appearing in the UPS Store where Mailbox-1 is located on or about December 1, 2020, wearing what I have learned are expensive designer sneakers.

24. Based on my conversations with NY DOL employees and my review of NY DOL records, I have learned that after the law enforcement search of Mailbox-1 on or about December 2, 2020, NY UI Claims began being addressed to three other commercial mailboxes in the vicinity of New Rochelle, Bronxville, and Yonkers, New York ("Mailboxes-2, -3, and -4"). Approximately 34 NY UI Claims were addressed to Mailboxes-2, -3, and -4. NY DOL employees identified Mailboxes-2, -3, and -4 as linked to the fraud scheme because certain phone numbers associated with other NY UI Claims were also associated with claims sent to Mailboxes-2, -3, and-4.

*The "1324" Ledger*

25. One of the pages of the Ledger found in the Lexus where RYAN MURDOCK, the defendant, was arrested appears, in part, as follows:

> Outlook emails   First name first letter of
> Last name 1324   Passwords verizon 1324$
>
> Example JoselynA1324@outlook.com
>
> Usernames Example JoselynA1324

26. Based on my conversations with NY DOL employees and review of records provided by the NY DOL, I have learned that submitting a claim for New York unemployment insurance requires the applicant to use an email address to create an online account with a NY DOL user id that will be associated with that application.

27. Based on my review of records provided by the NY DOL and conversations with NY DOL employees, I have learned the following:

    a. Each of the NY UI Claims identified by the NY DOL is associated with a user id for a NY DOL online unemployment insurance account (the "NY UI Accounts").

    b. Each of the NY UI Accounts was registered using a different email address (the "Email Addresses"). Approximately twenty-two of the NY UI Accounts were registered using a username and email address that follows a format similar to the format described in the Ledger, i.e., "First name first letter of Last name 1324."

    c. For example, the NY UI Account for a claim submitted on behalf of a victim ("Victim-5") is associated with an Email Address that lists the first name and last initial of Victim-5, and with an email address that likewise uses the first name and last initial of Victim-5, followed by "1324@gmail.com." The Email Addresses for these 22 NY UI Accounts differ from the format described in the Ledger in two respects: (1) they use gmail.com, or, in one case, yahoo.com, instead out of outlook.com as the domain name; (2) some of the email addresses include more of the individual's last name than just the last initial, e.g., the Email Address associated with the NY UI Account submitted on behalf of another victim ("Victim-6"), who has a common first and last name, uses the full first and last name of Victim-6, followed by "1324@gmail.com," as its email address.

    d. Similarly, almost of all of the user ids for these 22 NY UI Accounts uses a format similar to the one described on the Ledger for "Usernames": some portion of the individual's first name and last name, followed by the number "1324," with no spaces. For example, the NY UI Account for Victim-5 lists Victim-5's first name and last initial, followed by "1324" as its user id. Some of the user ids associated with the NY UI Accounts differ from the format in the Ledger in the same fashion as the associated email addresses: some use more of the individual's last name than just the first initial, e.g., the account associated with Victim-6 uses Victim-6's full first and last name, followed by "1324" as its user id.

*Session IDs*

28. Based on my participation in this investigation, including my conversations with NY DOL employees, and my review of NY DOL database records, I have learned the following, in substance and in part:

    a. Based on my training and experience, I know that an internet protocol ("IP") address is a unique string of characters that identifies each computer using the IP address to communicate over a network. It is possible for two or more electronic devices to share an IP address if these devices access the internet from a local network ("LAN")—essentially, while users may be using different computers or devices in one location, if these devices are all using the same internet connection, they will share an IP address. Metadata associated with the NY UI Claims provided by the DOL tracks when a specific IP address is used to access the Website, including a specific claim accessed through a NY DOL online unemployment insurance account.

    b. The NY DOL also assigns a "Session ID," which is also a unique string of characters, whenever the Website is opened in an internet browser window on a specific electronic device. As long as the Website remains open on that device's browser, any activity on the Website on that open browser window is logged under the assigned Session ID. For example, if a user opens the Website at home on their smartphone, logs in to one NY DOL unemployment insurance account, drives to work, and then logs in to a different NY DOL unemployment insurance account on the same smartphone browser window, without ever closing the browser, all of those logins will be associated with the same Session ID, even though the user's IP address likely changed when she drove from home to work. Once the Website is closed on the browser, for example, because the device is powered off, the Session ID ends. The next time the Website is accessed from the device, a new Session ID is assigned.

    c. Metadata associated with the NY UI Claims provided by the NY DOL indicated that at least approximately 17 of the NY UI Claims were accessed through the Website using their associated NY UI Accounts during a Session ID shared by the NY UI Account for the Real or Fake MURDOCK Claims. This means that the NY UI Account for either the Real or Fake MURDOCK Claim was accessed on the Website during the same browser

session, from the same device, as the NY UI Accounts for each of those 17 NY UI Claims. At least approximately 17 of the NY UI Claims were accessed through the Website during a Session ID shared by one of the NY UI Accounts associated with a phone number that was also associated with at least one of the NY UI Accounts in the name of RYAN MURDOCK, the defendant. At least approximately 8 of the NY UI Claims were accessed through the Website during a Session ID shared by one of the NY UI Accounts associated with one of the NY UI Cards found in the Lexus.

*Address-1 IP Addresses*

29. Based on my review of internet service provider ("ISP") records and my conversations with a data employee familiar with the ISP records, I have learned that from at least on or about August 13, 2020 to February 9, 2021, a certain static IP address ("IP Address-1") was assigned to an ISP account subscribed in the name of a person who shares the same last name as RYAN MURDOCK, the defendant, at Address-1 (the "Murdock ISP Account").

30. I have also learned that on or about February 9, 2021, IP Address 1 was no longer subscribed to Murdock ISP Account, and instead a new static IP address ("IP Address-2"), was assigned to the Murdock ISP Account. IP Address-2 was assigned to the Murdock ISP Account from on or about February 9, 2021 through at least on or about May 14, 2021.

31. Based on my review of metadata associated with the NY UI Claims, I have learned that multiple NY UI Claims, as well as additional unemployment insurance claims submitted in the name of individuals who share the last name as RYAN MURDOCK, the defendant, were accessed from IP Addresses-1 and -2 during the time period those IP addresses were as assigned to the Murdock ISP Account.

*ATM Surveillance Video*

32. Based on my review of ATM surveillance video provided by Bank-2, and my comparison of that video to photos of RYAN MURDOCK, the defendant, in law enforcement databases, I have identified MURDOCK using debit cards issued for the Victim-2 NJ Claim and the Victim-3 Kansas Claim, on the following dates, times, and locations, at Bank-2 branches:

| Date | Location | Victim | Amount |
|---|---|---|---|
| 7/24/20 | New York, NY | Victim-3 | $1000 |
| 7/26/20 | New York, NY | Victim-3 | $1000 |

| Date | Location | Victim | Amount |
|---|---|---|---|
| 7/27/20 | New York, NY | Victim-3 | $1000 |
| 7/28/20 | New York, NY | Victim-3 | $1000 |
| 7/29/20 | New Rochelle, NY | Victim-3 | $1000 |
| 8/1/20 | New York, NY | Victim-3 | $1000 |
| 8/2/20 | New York, NY | Victim-3 | $1000 |
| 8/5/20 | New York, NY | Victim-3 | $980 |
| 8/6/20 | New York, NY | Victim-3 | $500 |
| 8/10/20 | New York, NY | Victim-3 | $1000 |
| 8/11/20 | New York, NY | Victim-3 | $1000 |
| 8/12/20 | New York, NY | Victim-3 | $1000 |
| 8/13/20 | New York, NY | Victim-3 | $1000 |
| 8/14/20 | New York, NY | Victim-3 | $1000 |
| 8/15/20 | New York, NY | Victim-3 | $940 |
| 8/23/20 | New Rochelle, NY | Victim-2 | n/a[1] |
| 8/24/20 | New York, NY | Victim-2 | $460 |
| 8/27/20 | New York, NY | Victim-3 | $500 |
| 8/27/20 | New York, NY | Victim-2 | n/a |
| 9/2/20 | New Rochelle, NY | Victim-2 | n/a |
| 9/3/20 | New York, NY | Victim-2 | $460 |
| 9/12/20 | New York, NY | Victim-2 | $220 |
| 9/13/20 | New York, NY | Victim-3 | $480 |
| 10/2/20 | New Rochelle, NY | Victim-3 | $180 |
| 10/6/20 | New Rochelle, NY | Victim-2 | $240 |
| 10/9/20 | New York, NY | Victim-3 | n/a |
| 10/11/20 | New Rochelle, NY | Victim-3 | n/a |
| 10/14/20 | New York, NY | Vicitm-3 | n/a |
| 10/28/20 | New York, NY | Victim-2 | $1500 |

33.    Based on my conversations with a representative of Bank-2, I have learned that Bank-2 outsources the processing of transactions on prepaid debit cards like the debit cards issued for the Victim-2 NJ Claim and the Victim-3 Kansas Claim to a payment processing company ("Processor-1").  The relevant computer servers of Processor-1 are located in Virginia and Colorado. I have further learned that any ATM cash withdrawals made in New York using the debit cards for the Victim-2 NJ Claim or the Victim-3 Kansas Claim during the relevant time period would necessarily have been electronically routed through Processor-1's computer servers in Virginia or Colorado.

*Hotel-1 IP Address*

---

[1] "n/a" refers to a balance inquiry at an ATM instead of a cash withdrawal.

34. Based on my review of metadata associated with the NY UI Claims provided by the NY DOL and ISP records, I have learned that between March 2020 and November 2020, multiple NY UI Accounts were accessed through the Website over 200 times from a static IP address associated with a hotel in Manhattan, New York ("Hotel-1").

35. I have learned from my review of bank and DOL records that on or about August 3, 2020, the Kansas unemployment insurance debit card issued for the Victim-3 Kansas Claim and later recovered from the Lexus was used at a restaurant located in Hotel-1.

36. I have also learned from my review of ATM surveillance video that on or about August 2, 2020, and August 5, 2020, RYAN MURDOCK, the defendant, used the Kansas debit card issued for the Victim-3 Kansas Claim to withdraw cash from ATMs in Manhattan.

37. Based on my review of records provided by the Social Security Administration ("SSA") and the U.S. Postal Service, as well as my conversations with an SSA agent and Postal Inspector participating in this investigation, I have learned that Victim-3 receives social security payments at a mailbox located in Kansas. The mailbox is active and was renewed as recently as 2020. To date, this investigation has revealed no connection between Victim-and New York City or its surrounding environs. Based on my training and experience, and my investigation in this case, I know that it is unlikely that an 83-year-old man receiving social security payments in Kansas would have himself applied or authorized someone else to apply for unemployment insurance benefits to be sent to an address in New York City, or used by RYAN MURDOCK, the defendant, a man who, to date, this investigation has revealed no legitimate relationship with Vicitm-3. Accordingly, I believe there is probable cause to believe that Victim-3, like the other victims in this scheme, is a victim of identity theft.

38. Based on the foregoing, I believe there is probable cause to believe that RYAN MURDOCK, the defendant, is a participant in the scheme to fraudulently obtain COVID-19 Benefits.

WHEREFORE, deponent respectfully requests RYAN MURDOCK, the defendant, be imprisoned or bailed, as the case may be.

                                          X/ by the Court with permission
_____
Kilsie Colon
Special Agent
U.S. Department of Labor
Office of the Inspector General

Sworn to before me by reliable electronic means this __3rd__ day of August 2021

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York